196 P.3d 352

Jerry MENDENHALL, an individual, Plaintiff–Appellant,

v.

Alan W. ALDOUS and Jennifer Aldous, husband and wife, doing business as Aldous Construction, Defendants–Respondents.

No. 34700.

Supreme Court of Idaho, Rexburg, September 2008 Term.

Oct. 23, 2008.

Thomsen Stephens Law Offices, PLLC, Idaho Falls, for appellant. James D. Holman argued.

Jordan P. Smith, Salmon, and Beard St. Clair Gaffney PA, Idaho Falls, for respondents. Lance J. Schuster argued.

J. JONES, Justice.

Jerry Mendenhall sued Alan and Jennifer Aldous, dba Aldous Construction, for breach of contract after they failed to finish work on two contracts relating to Mendenhall's house and a detached shop. The Aldouses moved for summary judgment, contending Mendenhall failed to comply with Idaho's Notice and Opportunity to Repair Act, I.C. §§ 6–2501–

2504. The district court granted summary judgment and Mendenhall appealed. We vacate and remand.

## I.

Jerry Mendenhall filed suit against Alan and Jennifer Aldous after they disagreed about work the couple was to perform on a house Mendenhall purchased from them. The Aldouses were in the process of building the home for themselves when Mendenhall offered to buy it. The parties entered into a sales agreement that outlined several specific tasks the Aldouses were to complete on the home. Mendenhall made a separate agreement with Alan Aldous to build a detached shop on the premises. Alan completed the shop but, after an argument with Mendenhall regarding payment, he left the job site and did not finish the remaining work on the home.

The Aldouses hired attorney Jordan Smith in an effort to resolve the dispute. On February 18, 2005, Smith sent Mendenhall a letter on behalf of his clients. The letter discussed various unfinished aspects of the house and suggested a resolution for each. Mendenhall replied by letter on March 11 ("the March 11 letter"). The March 11 letter complained of unfinished work on the house and of a leaking roof. It also stated that Mendenhall was having problems with the detached shop Alan built. In the letter, Mendenhall stated he had "no choice but to hire other contractors to do [Alan's] work" and that he expected Alan to pay for the work "at the time it is due without further dispute." Smith wrote back on March 15 ("the March 15 letter"). He stated that "[i]t would be helpful if you would specify the proposals in my first letter that you will accept, and specify the action that you would like Alan and Jeni to perform." After receiving the letter, Mendenhall hired attorney Ronald Swafford, who sent the Aldouses a demand letter for $29,496.74 on April 29. This letter ended communication between the parties.

Nearly a year later, Mendenhall filed a complaint against the Aldouses, alleging breach of contract based on Alan's work on

the house and shop. The Aldouses answered and asserted the affirmative defense that Mendenhall failed to comply with Idaho's Notice and Opportunity to Repair Act ("NORA" or "Act"), I.C. §§ 6–2501–2504. The Aldouses moved for summary judgment on that basis, which the district court granted. Mendenhall appeals, contending that his March 11 letter satisfied the requirements of NORA.

## II.

On appeal, we are concerned with two issues: (1) whether the district court properly granted the Aldouses' motion for summary judgment on the basis that Mendenhall failed to comply with NORA; and (2) whether the Aldouses are entitled to attorney fees.

## A.

## Standard of Review

■■■ When reviewing an order for summary judgment, the standard of review for this Court is the same standard used by the district court in ruling on the motion. *Watson v. Weick*, 141 Idaho 500, 504, 112 P.3d 788, 792 (2005). Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Idaho R. Civ. P. 56(c). A mere scintilla of evidence or only slight doubt is not sufficient to create a genuine issue of material fact. *Finholt v. Cresto*, 143 Idaho 894, 897, 155 P.3d 695, 698 (2007). The nonmoving party must submit more than conclusory assertions that an issue of material fact exists to withstand summary judgment. *Id.* at 896–97, 155 P.3d at 697–98. However, we will construe all disputed facts and reasonable inferences in favor of the nonmoving party. *Carnell v. Barker Mgmt., Inc.*, 137 Idaho 322, 327, 48 P.3d 651, 656 (2002). If there is no genuine issue of material fact, "only a question of law remains, over which this Court exercises free review." *Watson*, 141 Idaho at 504, 112 P.3d at 792.

## B.

## The District Court's Grant of Summary Judgment Was Improper

Although Mendenhall was not aware of NORA when he drafted the March 11 letter, he argues that the district court erred in granting the Aldouses' motion for summary judgment because the March 11 letter satisfied NORA's notice requirement. Further, he maintains that the Aldouses did not comply with NORA because they did not respond to his letter in the manner required by the Act. The Aldouses argue that summary judgment was proper because the March 11 letter did not provide them with reasonably detailed notice of the construction defects Mendenhall alleged and, as a result, their duty under NORA was not triggered.

### 1.

## Mendenhall's March 11 Letter Satisfied NORA's Notice Requirement

NORA is a relatively new piece of legislation, and interpretation of the statute is a matter of first impression for this Court. The Act was passed in 2003. The Idaho Building Contractors Association sponsored the bill in an effort to curb litigation against building contractors by homeowners. The purpose of the law is to give contractors the opportunity to fix construction defects before a lawsuit is filed. In furtherance of this goal, NORA requires a claimant to "serve written notice of claim on the construction professional," prior to filing an action alleging a construction defect. I.C. § 6–2503(1). The written notice must "state that the claimant asserts a construction defect claim against the construction professional and ... describe the claim in reasonable detail sufficient to determine the general nature of the defect." *Id.* If a claimant fails to provide written notice before filing suit, his or her claim will be dismissed without prejudice and it "may not be recommenced until the claimant has complied with the [notice] requirements." *Id.* Importantly, nothing in the statute requires a claimant to *knowingly* comply with its notice provisions.

■■■ This case comes down to whether Mendenhall's March 11 letter described his

claims "in reasonable detail sufficient to determine the general nature of the defect[s]." In enacting NORA, the Legislature did not define the phrase "reasonable detail." Accordingly, we must determine the Legislature's intent from the statutory language and ordinary meaning of the terms. *See Ag Servs. of Am., Inc., v. Kechter*, 137 Idaho 62, 64, 44 P.3d 1117, 1119 (2002). "Reasonable" means "being or remaining within the bounds of reason ... not extreme ... not excessive ... not demanding too much." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1892 (1966). "Detail" simply means "to relate in particulars." *Id.* at 616. These definitions indicate that NORA's notice requirement does not require claimants to describe alleged defects with excessive particularity.[1] Instead, the "reasonable detail" requirement is satisfied when a claimant provides a builder with enough information to identify the general nature and location of the defect.

■ Mendenhall's March 11 letter satisfies the notice requirements of NORA for the construction defects he alleges therein. His letter sufficiently identified the nature and location of the defects. The letter stated, among other things, "water problem with north roof of great room, east spouting leaks in four places."[2] This surely provided enough detail and pertinent information to permit the Aldouses to inspect the home and determine "the general nature of the defect[s]."

■ With regard to Mendenhall's claims for defects in the construction of his detached shop, it is important to note, for the purpose of providing guidance on remand, that NORA does not apply to claims alleging construction defects in non-residential structures.[3] The Act only applies to lawsuits or actions "for damage or the loss of use of real or personal property caused by a defect in the construction of a *residence* or in the substantial remodel of a *residence*." I.C. § 6–2502(1) (emphasis added). A residence is defined as a "single-family house, duplex, triplex, quadraplex, condominium or a unit in a multiunit residential structure." I.C. § 6–2502(7). Under the circumstances of this case, the definition does not include Mendenhall's detached shop.

**2.**

**The Aldouses Did Not Comply With NORA**

Notice of a claim alleging a construction defect triggers a builder's duty to respond under NORA. I.C. § 6–2503(2). After receiving notice of a defect claim, a builder must respond in writing by: (1) submitting a proposal to inspect the residence within a specified time, which must include a statement that the builder will, based on the

---

1. Further, in light of the fact that homeowners claiming defects under NORA are generally not familiar with the intricacies of the construction business, it would not make sense to require them to provide builders with technical, overly-specific descriptions of alleged construction defects.

2. The letter also claimed that the basement had not been textured, that he wanted a fireplace chimney as agreed in the contract, and that the Aldouses needed to finish the entry door, the entry porch and sidewalk, and the "wing and slab on basement walk out." Both parties and the district court treated these items as allegations of construction defects covered by NORA. The text of NORA, however, indicates that the statute was not intended to apply to claims for non-performance, but only to claims for defects in construction. The legislature did not define the term "construction defect," but the title of section 6–2503, "Notice and opportunity to repair," suggests that there must be an actual defect to trigger the statute. Failure to complete

agreed upon work, therefore, generally does not constitute a construction defect. Unless a claim for non-performance has aspects of both non-performance and defective performance, it should typically be regarded as non-performance of the contract that is not covered by NORA. Because Mendenhall did not raise the issue of whether NORA applies to his claims for non-performance on appeal, however, we decline to address the issue. Whatever Mendenhall's above-mentioned claims are classified as, the March 11 letter describing the problems satisfied NORA.

3. Mendenhall belatedly raised the argument that the construction defects in the shop did not fall under NORA in his briefing to this Court. While this Court does not consider issues raised for the first time on appeal, *see Obenchain v. McAlvain Const., Inc.*, 143 Idaho 56, 57, 137 P.3d 443, 444 (2006), in this case we address the issue solely to provide guidance for the district court on remand.

inspection, either "offer to remedy the defect, compromise by payment, or dispute the claim"; (2) offering "to compromise and settle the claim by monetary payment without inspection"; or (3) stating "that [he or she] disputes the claim and will neither remedy the construction defect nor compromise and settle the claim." *Id.* If a builder either fails to submit such a response within twenty-one days of receiving notice or disputes the claim, the claimant is permitted to file suit without further notice. I.C. § 6–2503(3)(a).

 Mendenhall's compliance with NORA's notice requirement triggered the Aldouses' duty under section 6–2503(2).[4] The Aldouses, however, failed to comply with the provision. After receiving the March 11 letter, the Aldouses' attorney responded with the March 15 letter. The letter, in its entirety, reads:

> Thank you for your recent letter, which I carefully reviewed with my clients. It would be helpful if you would specify the proposals in my first letter that you will accept, and specify the action that you would like Alan and Jeni to perform. In that manner, we can determine which issues can be agreed upon, and which issues will need to be resolved. We would be happy to personally meet with you and/or your attorney if that would expedite the matter.

Nothing in the letter can be construed as a proposal to inspect the residence, an offer to compromise by monetary payment without inspection, or a statement indicating that the Aldouses disputed the claim and would not remedy the defect or settle the claim. While the letter may be viewed as an invitation to negotiate, that is not an alternative provided for under section 6–2503(2). Because the Aldouses failed to comply with their duty to respond under NORA, Mendenhall was free to pursue his claim in court. Accordingly, the district court's decision to grant the Aldouses' motion for summary judgment was inappropriate.

## C.

### Attorney Fees Should be Determined After Remand

The district court awarded attorney fees to the Aldouses after determining it was proper under either Idaho Code section 12–120(3) or section 12–121, but did not specify precisely which provision it was relying on. Since we vacate the order granting summary judgment, the attorney fee award is necessarily vacated. Any fee award will be subject to determination based on the outcome upon remand.

## III.

We vacate the district court's grant of summary judgment and remand for further proceedings in accordance with this opinion. The district court's fee award is vacated. Costs awarded to Mendenhall.

Chief Justice EISMANN, and Justices BURDICK, W. JONES and HORTON concur.

---

4. The Aldouses argue that Mendenhall's statements in his March 11 letter that he intended to hire other contractors to finish the work on the home and that he expected the Aldouses to pay for it, somehow relieved them of their duty to comply with the Act. However, nothing in NORA relieves a builder of his or her obligation to respond to a defect claim solely because a claimant makes a demand for payment. Rather, the Act provides that "[w]ithin twenty-one (21) days after service of the notice of claim, the construction professional *shall* serve a written response on the claimant." I.C. § 6–2503(2) (emphasis added). We have previously held that the word "shall" when used in a statute imposes a mandatory obligation. *See, e.g., Paolini v. Albertson's Inc.*, 143 Idaho 547, 549–50, 149 P.3d 822, 824–25 (2006). Therefore, the Aldouses argument is unpersuasive.