# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 48567

GERALD NEESER, trustee of the Gerald E. Neeser Revocable Living Trust, )

   Plaintiff-Respondent, )

v. )

INLAND EMPIRE PAPER COMPANY, a Washington corporation, )

   Defendant-Appellant. )

Boise, May 2022 Term

Opinion Filed: August 23, 2022

Melanie Gagnepain, Clerk

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Lansing L. Haynes, District Judge.

The decision of the district court is <u>vacated</u>, and the case is <u>remanded</u>.

James, Vernon & Weeks, P.A., Coeur d'Alene, for appellant, Inland Empire Paper Company. Susan P. Weeks argued.

Randall | Danskin, P.S., Spokane, WA, for respondent, Gerald Neeser. Michael L. Wolfe argued.

_____

STEGNER, Justice.

Gerald Neeser, in his capacity as trustee of the Gerald E. Neeser Revocable Living Trust (Neeser), owns two adjacent parcels of land, Lots 3 and 4, on the south shore of Spirit Lake in Kootenai County, Idaho. Inland Empire Paper Company (IEP) owns several hundred acres of land adjacent to Neeser's, which it uses to grow and harvest timber. Neeser filed a complaint alleging that he had a prescriptive easement over IEP's land, specifically a road known as the "M1 Road," for ingress and egress to his property. Both parties moved for summary judgment. The district court granted Neeser's motion for summary judgment after concluding that Neeser had established a prescriptive easement over IEP's land benefiting Lots 3 and 4 and that there were no genuine issues of material fact regarding that issue. Several months later, IEP moved the district court to reconsider its order on summary judgment, which the district court denied. IEP timely appealed. For the reasons discussed below, we reverse the decision of the district court.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Factual Background

Neeser purchased Lots 3 and 4 of the Amadahi Park subdivision on the southern shore of Spirit Lake on August 3, 1999. Neeser subsequently purchased Lot 2 on September 11, 2002. Neeser sold Lot 2 to his sister but reacquired it from her in 2015. One lot (it is unclear which one) has a residence with a garage and driveway, while the other two each have small cabins. Neeser stated in his declaration that each lot was accessible by what is colloquially called the M1 Road, which runs over land owned by IEP. In his complaint, Neeser claimed that he began using the M1 Road to access his property when he first purchased Lots 3 and 4 in 1999. Neeser further claimed that his personal guests and various hired tradesmen have also used the M1 Road to access his parcels since 1999. Finally, Neeser claimed that the M1 Road is the "only reasonable means of accessing [his] property by automobile."

Neeser alleged that IEP installed a locked gate on the M1 Road in 2016 and that IEP sought a periodic fee of $500 in exchange for granting Neeser a revocable permit in exchange for keys to the gate. Neeser declined to sign the agreement because it "could have unreasonably restricted Neeser's ability to access his property, as it was terminable, leaving his only access to his property by boat."

IEP owns approximately 600 acres of land near the shoreline of Spirit Lake adjacent to Neeser's parcels. IEP claims that its property has multiple roads that cross over it, roads which IEP has maintained. IEP acknowledges that it has historically allowed the public to use its roads; however, in July of 2016, IEP installed a locked gate on the M1 Road to "control timber theft and potential damage to its properties due to high fire danger conditions." IEP stated that its property is not cultivated for crops and has no improvements on it; however, IEP later acknowledged that its forest lands "are allowed to grow and are occasionally harvested . . . as the forest reaches maturity."

In 2001, IEP began selling permits to the public for access to its property. IEP also hired a security service to enforce the permit requirement and patrol its lands. Paul Buckland, the Forest Resource Manager for IEP, testified during his deposition that from 2001–2006 IEP operated an educational campaign, informing anyone on the property of the need for a permit. Buckland testified that during this time, no one was required to leave the property if they did not have a permit. Rather, IEP only started enforcing its permit requirement in 2006.

In 2016, IEP installed a locked gate preventing access to the M1 Road. As mentioned above, IEP offered Neeser a revocable permit at the cost of $500 in exchange for keys to the gate. Neeser declined to accept the permit because it was revocable.

## B. Procedural History

On May 31, 2018, Neeser, in his capacity as Trustee of the Gerald E. Neeser Revocable Living Trust, filed a complaint against IEP alleging that the trust had an easement by prescription "over and across IEP Property's private roads." Neeser also alleged that IEP committed intentional interference with his property rights by installing the locked gate. Neeser's complaint also asserted claims for nuisance, quiet title, a declaratory judgment, and injunctive relief. On July 26, 2018, IEP filed an answer to the complaint, asserting two affirmative defenses: failure to state a claim upon which relief may be granted and the statute of frauds.

In May of 2019, IEP moved for summary judgment. IEP argued that Neeser could not establish a prescriptive easement because the M1 Road was used "in common with the owner and the general public," thereby negating the "open and notorious" and "adverse and under a claim of right" elements necessary to establish a prescriptive easement. In support of its summary judgment motion, IEP also filed a declaration by Paul Buckland, photos of the M1 Road, and a copy of its warranty deed for the 600 acres.

Neeser opposed IEP's motion for summary judgment and simultaneously filed his own motion for summary judgment. Neeser first disputed that he used the M1 Road in the same manner as the general public because his property has three residences, and he regularly invites guests to visit and tradesmen to complete construction work on his property. Neeser then argued that there was no dispute of material fact regarding each element to establish a prescriptive easement. In support of his motion for summary judgment, Neeser's counsel filed a declaration with several exhibits attached. The exhibits included the warranty deeds for each parcel, maps of the property, the transcript of Buckland's deposition, and road maintenance logs for work IEP had done to maintain the M1 Road. Neeser filed his own declaration as well, describing how he and others have used his property and the M1 Road historically. Attached to Neeser's declaration were photographs of Neeser's main residence.

IEP responded to Neeser's motion for summary judgment, specifically arguing, *inter alia*, that summary judgment should be granted regarding Lot 2 of Neeser's property. IEP argued that

Neeser failed to meet the statutory period regarding Lot 2 because he purchased Lot 2 in 2002, and the new, 20-year statutory period had not run.[1]

Next, IEP filed a motion to strike portions of the declarations of Neeser and Neeser's counsel. IEP argued that portions of Neeser's testimony were inadmissible because they were not based on personal knowledge or lacked adequate foundation to be considered on summary judgment. Neeser opposed the motion to strike.

There is nothing in the record indicating that the district court held a hearing on the parties' cross motions for summary judgment, aside from a notice of hearing filed by IEP, but the district court orally pronounced its ruling at a hearing on September 17, 2019. The district court first ruled on IEP's motion to strike. The district court struck portions of Neeser's declaration testimony, including Neeser's statement about when he believed his residence and the other two cabins had been built and Neeser's statement about the use of the M1 Road by his property's predecessors in interest. The district court concluded that the remaining portions of Neeser's declaration were admissible evidence. Finally, the district court declined to strike Exhibit A, a warranty deed, finding that it was a true and correct copy of what it purported to be. The district court also declined to strike Exhibit I, a satellite map image of the M1 Road, finding that the writing on the map was "labeled automatically by the satellite image in Google Maps," and was, therefore, not hearsay.

Regarding the cross-motions for summary judgment, the district court first concluded that the M1 Road was not open to the public as of 2001 because IEP required the public to purchase permits to use the road. Next, the district court concluded that Neeser had demonstrated a "unique use" of the road "beyond what members of the general public have used it for" because he had guests and tradesmen travel on the road to reach his residence. The district court concluded that Neeser had met each element required to prove a prescriptive easement and granted Neeser's motion for summary judgment for Lots 3 and 4. The district court denied Neeser's motion for summary judgment with respect to Lot 2 because Neeser had not satisfied the 20-year statutory period regarding that parcel since he repurchased it in 2002. Finally, the district court denied IEP's motion for summary judgment regarding Lots 3 and 4. The district court entered an order to this

---

[1] Idaho Code section 5-203 sets forth the statutory period required to establish a prescriptive easement. I.C. § 5-203. Prior to 2006, the statutory period was five years. In 2006, section 5-203 was amended, increasing the statutory period from five years to twenty years. *See* S.B. No. 1311, 59th Leg., 2d Reg. Sess. (Idaho 2006).

4

effect on October 1, 2019. Neeser moved to voluntarily dismiss any remaining claims not resolved by the summary judgment ruling, which the district court granted.

IEP filed a motion for reconsideration in June of the following year. First, IEP moved the district court to reconsider its evidentiary rulings regarding the motion to strike. IEP argued that Exhibit A to Neeser's motion for summary judgment was not a true and correct copy of the warranty deed because it was missing two pages. IEP next challenged the district court's determination that Neeser, his guests, and the tradesmen he hired frequently used the M1 Road. Finally, IEP urged the district court to reconsider its determination that the presumption of adverse use applied because Neeser testified that he began using the M1 Road when he purchased Lots 3 and 4 in 1999. IEP attached the declaration of Todd Tondee, a Kootenai County Commissioner, to its motion to reconsider. Tondee stated that the "neighborhood code" for Neeser's parcels provided for "1420 Boat Access Only Frontage." Neeser opposed IEP's motion to reconsider.

The district court denied IEP's motion for reconsideration. The district court reaffirmed its conclusions that Neeser's declaration testimony was based on personal knowledge and that Neeser's use of the Road constituted "frequent use." The district court entered a declaratory judgment establishing Neeser's prescriptive easement over the M1 Road. The district court defined the scope of the easement "for residential and recreational use, by any means of transportation consistent with those uses, for access to the benefited parcel." IEP timely appealed.

## II. STANDARD OF REVIEW

"When reviewing an order for summary judgment, the standard of review for this Court is the same standard used by the district court in ruling on the motion." *Mendenhall v. Aldous*, 146 Idaho 434, 436, 196 P.3d 352, 354 (2008). "The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "The burden of establishing the absence of a genuine issue of material fact rests at all times with the party moving for summary judgment." *Van v. Portneuf Med. Ctr.*, 147 Idaho 552, 556, 212 P.3d 982, 986 (2009). "On review, this Court liberally construes the record in the light most favorable to the party opposing the motion, drawing all reasonable inferences and conclusions in that party's favor." *CNW, LLC v. New Sweden Irr. Dist.*, 161 Idaho 89, 91, 383 P.3d 1259, 1261 (2016) (quoting *Avila v. Wahlquist*, 126 Idaho 745, 747, 890 P.2d 331, 333 (1995)). "If there is no genuine issue of material fact, 'only a question of law remains, over which this Court exercises free review.'" *Mendenhall*, 146 Idaho at 436, 196 P.3d at 354 (quoting *Watson v. Weick*, 141 Idaho 500, 504, 112 P.3d 788, 792 (2005)).

*Davison v. Debest Plumbing, Inc.*, 163 Idaho 571, 574–75, 416 P.3d 943, 946–47 (2018).

The admissibility of evidence contained in affidavits and depositions in support of or in opposition to a motion for summary judgment is a threshold matter to be addressed before applying the liberal construction and reasonable inferences rule to determine whether the evidence creates a genuine issue of material fact for trial. *Gem State Ins. Co. v. Hutchison*, 145 Idaho 10, 13, 175 P.3d 172, 175 (2007) (citing *Carnell v. Barker Mgmt., Inc.*, 137 Idaho 322, 327, 48 P.3d 651, 656 (2002)). "This Court applies an abuse of discretion standard when reviewing a trial court's determination of the admissibility of testimony offered in connection with a motion for summary judgment." *Id.* at 15, 175 P.3d at 177 (citing *McDaniel v. Inland Northwest Renal Care Group–Idaho, LLC*, 144 Idaho 219, 221, 159 P.3d 856, 858 (2007)).

*Fragnella v. Petrovich*, 153 Idaho 266, 271, 281 P.3d 103, 108 (2012).

When this Court reviews an alleged abuse of discretion by a trial court the sequence of inquiry requires consideration of *four* essentials. Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.

*Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018) (italics in original). Furthermore, this Court exercises free review over questions of law, "including the question 'of whether the facts found, or stipulated to, are sufficient to satisfy the legal requirements for the existence of an implied easement or a prescriptive easement.'" *Latvala v. Green Enterprises, Inc.*, 168 Idaho 686, 695, 485 P.3d 1129, 1138 (2021) (quoting *Backman v. Lawrence*, 147 Idaho 390, 394, 210 P.3d 75, 79 (2009)).

## III.    ANALYSIS

### A. The district court abused its discretion in declining to strike portions of Neeser's declaration.

Neeser submitted a declaration and several exhibits in support of his motion for summary judgment. Neeser's declaration described the three parcels he owns and how he has used them since his first purchase in 1999. The exhibits included a photo of Neeser's residence, a warranty deed conveying "Lot 2 of Amadahi Park, Spirit Lake, Kootenai County, Idaho, to Mr. Neeser dated September 4, 2002," and a "printout from Google Maps of a satellite image of the area of the south shore of Spirit Lake, Mr. Neeser's residence, and a portion of what is believed to be the M1 Road identified on the map as 'Quisentree Way.'" IEP moved to strike portions of Neeser's declaration

6

as well as the three exhibits,[2] arguing that Neeser's statements lacked personal knowledge, foundation, or were irrelevant.

Curiously, IEP's motion to strike and the cross-motions for summary judgment did not include oral arguments. Rather, the district court merely scheduled a time for counsel for the parties to attend an oral ruling on the parties' cross-motions for summary judgment. In announcing its oral ruling, the district court struck some, but not all, of the portions of Neeser's declaration which IEP had moved to strike and declined to strike any of the exhibits. The district court struck Neeser's statements about when he believed the residences on his property had been built. The district court also struck Neeser speculating about how his predecessors in interest had used the property. However, the district court considered the remainder of Neeser's declaration in ruling on the cross-motions for summary judgment, which included his description of how tradesmen and his guests had accessed Neeser's property.

On appeal, IEP first argues that the district court abused its discretion when it declined to wholly grant IEP's motion to strike the portions of Neeser's declaration to which it had objected. Specifically, IEP argues that the district court abused its discretion in admitting Neeser's testimony that tradesmen and guests used the M1 Road to access Lots 3 and 4. IEP alleges that these statements were conclusory because Neeser did not testify about providing a route or map for the tradesmen and guests to use; therefore, he could not prove that they had used the M1 Road. As a result, IEP contends that allowing this testimony to be considered on summary judgment affected its substantial rights because it was later relied upon by the district court to support its findings on several of the prescriptive easement elements.

"'The admissibility of evidence under I.R.C.P. 56(e) is a threshold question' that should be analyzed prior to applying the rules governing summary judgment." *Teurlings v. Larson*, 156 Idaho 65, 75, 320 P.3d 1224, 1234 (2014) (quoting *Herrera v. Estay*, 146 Idaho 674, 680, 201 P.3d 647, 653 (2009)).

> The "trial court has the discretion to decide whether an affidavit offered in support of or opposition to a motion for summary judgment is admissible under Rule 56[(c)(4)]." *Est. of Ekic v. Geico Indem. Co.*, 163 Idaho 895, 898, 422 P.3d 1101, 1104 (2018). Thus, "[t]his Court reviews challenges to a trial court's evidentiary rulings under the abuse of discretion standard." *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 50, 995 P.2d 816, 820 (2000). When this Court reviews an alleged abuse of discretion, it asks whether the trial court "(1) correctly perceived

---

[2] IEP does not challenge the consideration of these exhibits on appeal.

the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

*Dep't of Fin., Sec. Bureau v. Zarinegar*, 167 Idaho 611, 625, 474 P.3d 683, 697 (2020) (alterations in original).

Furthermore, Idaho Rule of Civil Procedure 56, which governs summary judgment, affords the trial court discretion to determine whether affidavits offer admissible evidence:

> An affidavit used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated. Sworn or certified copies of all papers or parts of papers referred to in an affidavit must be attached to or served with the affidavit. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

I.R.C.P. 56(c)(4). "The requirements set forth in I.R.C.P. 56(c)(4) 'are not satisfied by an affidavit that is conclusory, based on hearsay, and not supported by personal knowledge.'" *Zarinegar*, 167 Idaho at 626, 474 P.3d at 698 (quoting *Portfolio Recovery Assocs., LLC v. MacDonald*, 162 Idaho 228, 231, 395 P.3d 1261, 1264 (2017)).

We conclude that the district court abused its discretion by admitting the portions of Neeser's declaration that lacked foundation and were hearsay. Specifically, Neeser declared, in part, that:

- "Tradesmen and machinery used for work on my property came over the M1 Road. Tradesmen generally come over the M1 Road to access my property for repairs or improvements almost every summer season."

- "I have ten brothers and sisters who have each accessed my property via the M1 Road from time to time. Every Fourth of July for the last two decades I have had a big party at my Spirit Lake residence, with scores of attendees each year. These people also typically access my property via the M1 Road."

- "The M1 Road is clearly the only reasonable means of accessing my property by automobile. Though the M1 Road appears to have some off-shoots and 'bunny trails,' none of them provides access to my property as can be gained via the M1 Road. There is simply no other reasonable means to access my property."

These three statements are problematic because they lacked foundation. Neeser produced no evidence from the purported tradesmen and guests stating that they had personally traveled the M1

Road. Neeser did not have personal knowledge of the route that each of his purported tradesmen and guests traveled to reach his property. In addition, to the extent Neeser is relying on what the tradesmen and guests told him, the declaration does not rely on Neeser's personal knowledge and is hearsay. Clearly, his declaration does not suggest that is his basis of knowledge. He did not offer evidence of a route he informed the tradesmen and guests to use. Neeser also failed to identify specific business entities he hired or guests that he contends traveled over the M1 Road. In fact, Neeser himself acknowledged that "off-shoots" and "bunny trails" run in the vicinity of M1 Road on IEP's property. The portions of Neeser's declaration quoted above were not based on his personal knowledge and encompassed hearsay by stating that his tradesmen and guests accessed his property via the M1 Road. As such, the district court abused its discretion in admitting the evidence because it failed to act consistently with this Court's applicable legal standards for admission of evidence. *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194. Consequently, we conclude that the district court erred in denying IEP's motion to strike the bulk of Neeser's declaration testimony.

**B. The district court erred in granting Neeser's motion for summary judgment.**

Given our previous conclusion that the district court erred in not striking all of Neeser's declaration that was outside his personal knowledge, we will now address whether summary judgment was proper based on the remainder of the admissible evidence before the district court.

In Idaho, prescriptive easements are disfavored and are to be "closely scrutinized." *Latvala*, 168 Idaho at 700, 485 P.3d at 1143. There are five elements necessary to prove the existence of a prescriptive easement: the plaintiff must show that the use of the disputed property was "(1) open and notorious, (2) continuous and uninterrupted, (3) adverse and under a claim of right, (4) with the actual or imputed knowledge of the owner of the servient tenement (5) for the statutory period of five[3] years." *Id.* at 696, 485 P.3d at 1139 (quoting *Backman*, 147 Idaho at 394, 210 P.3d at 81). The trial court must make findings for each required element to be sustained on appeal. *Id.*

Several of the elements incorporate rebuttable presumptions; however, we have repeatedly "cautioned against becoming overly focused on discussions of shifting presumptions in

---

[3] *See* I.C. § 5-203 (2020). As noted, prior to 2006, the statutory period was five years. In 2006, section 5-203 was amended, changing the statutory period from five years to twenty years. *See* S.B. No. 1311, 59th Leg., 2d Reg. Sess. (Idaho 2006). Because Neeser purchased Lots 3 and 4 in 1999, the applicable statutory period was five years. *Id.* IEP does not submit argument that the five-year statutory period applies. Consequently, it has forfeited that argument on appeal.

prescriptive easement cases. 'To disentangle Idaho prescriptive easement law, we emphasize the need for courts to streamline their analysis by focusing simply on whether the five prescriptive easement elements have been satisfied based on the facts before them.'" *Cook v. Van Orden*, 170 Idaho 46, 54, 507 P.3d 119, 127 (2022) (quoting *Hughes v. Fisher*, 142 Idaho 474, 481, 139 P.3d 1223, 1230 (2005)).

IEP challenges the district court's findings on several grounds. However, the bulk of the disputed evidence lies within the "adverse and under a claim of right" element. Regarding adverse use, the district court concluded as follows:

> The [c]ourt is aware that proof of open, notorious, continuous, and uninterrupted use of the road under a claim of right for a prescriptive period without evidence of how the use began, raises a presumption that the use was adverse and under a claim of right if the use was in a manner that was also open to the public, the plaintiff must perform some unique act to signify to the owner of the servient estate the adverse claim of the plaintiff.
>
> The [c]ourt finds under the evidence here that the roadway was not open to the public as of 2001 given that the owner of the servient estate began to inform the public of the need for permits and, in fact, tried to inform the public of the need for permits.
>
> *The [c]ourt finds that Plaintiff has showed that Plaintiff was engaged in a unique use of that road beyond what general members of the public have used it for by the fact that the road was used for guests to come to Plaintiff's residence from time to time, that tradesmen traveled that road for the purpose of the plaintiff's needs for construction work, and that materials were brought to Plaintiff's property over that road for the purpose of Plaintiff's construction use, that that use of the road by Plaintiff differentiates Plaintiff's claim over the road – or use of the road from that of the general public.*

(Italics added.)

> This Court has recognized that
>
> [a] party's use is adverse where "it runs contrary to the servient owner's claims to the property." [*Hodgins v. Sales*, 139 Idaho 225, 231, 76 P.3d 969, 975 (2003)]. "The state of mind of the users of the alleged easement is not controlling; instead, the focus is on the nature of their use." *Backman*, 147 Idaho at 397–98, 210 P.3d at 82–83. When a "claimant presents proof of open, notorious, continuous, uninterrupted use of the claimed right for the prescriptive period, even without evidence of how the use began, he raises the presumption that the use was adverse and under a claim of right." *Akers v. D.L. White Const., Inc.*, 142 Idaho 293, 303, 127 P.3d 196, 206 (2005). Then the burden of proof "shifts to the owner of the servient tenement to show that the claimant's use was permissive, or by virtue of a license, contract, or agreement." *Id.*

*Latvala*, 168 Idaho at 697–98, 485 P.3d at 1140–41.

10

The presumption of adverse use may be rebutted by evidence that the plaintiff used the disputed property in common with the owner or the general public. *Cook*, 170 Idaho at 54, 507 P.3d at 127. However, "some decisive act on the user's part indicating a separate and exclusive use" is evidence that can be used to support the presumption that the use was adverse. *Id.* Here, the district court concluded that Neeser's use of the M1 road was "unique" and different from that of the general public because his personal guests and tradesmen used the road to access his residence. The district court relied almost exclusively on Neeser's declaration testimony regarding his tradesmen and guests to conclude that Neeser used the M1 Road in a manner different from the general public. However, we concluded above that the district court erred in admitting this evidence; therefore, it also erred in rely on this evidence to reach its conclusion. Accordingly, we cannot now conclude that no genuine dispute of material fact existed regarding whether Neeser's use was "in common with the general public." Neeser simply has not provided admissible evidence to support that proposition.

Further, Buckland testified that the public was allowed to use the M1 Road (without permits) prior to 2001, and then from 2001-2006 while IEP implemented its permit program and educated the public on the need for permits during that time. Neeser did not offer admissible evidence that he used the M1 Road in any manner different from the general public. When viewing the evidence in the light most favorable to IEP, it is apparent that the district court erred in granting summary judgment.

Because we conclude that Neeser failed to demonstrate the absence of an issue of material fact, we need not reach the remaining issues raised by IEP. Neeser did not offer admissible evidence eliminating the issues of material fact regarding the elements of a prescriptive easement. Consequently, the district court erred in granting Neeser's motion for summary judgment.

## C. Neeser is not entitled to attorney fees on appeal.

Neeser seeks attorney fees on appeal pursuant to Idaho Code section 12-121. Idaho Code section 12-121 provides, in relevant part, that "[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. Because Neeser has not prevailed on appeal, he is not entitled to attorney fees.

## IV.    CONCLUSION

The district court's decision granting summary judgment is vacated, and the case remanded for further proceedings. Costs are awarded to IEP as a matter of right as provided by I.A.R. 40.

Chief Justice BEVAN, Justices BRODY, MOELLER and ZAHN CONCUR.